| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **2:12-cv-00264-PPS** |
| | ) | |
| CROWN POINT SCHOOL CORP. and | ) | |
| BRETT CRUTCHFIELD, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Jane Doe (so called because she was a minor when the events in this case happened) sued her high school science teacher Brett Crutchfield and the Crown Point School Corporation after Crutchfield made inappropriate advances towards Doe at school, using school e-mail, and by texting. Jane Doe ended up leaving the school, and instead attended the Crown Point alternative school, which she claims didn't offer as rigorous an education or as broad of course offerings as the main school. All three parties have filed motions for summary judgment. For the reasons detailed in this Order, the School's motion will be granted on the three counts remaining against it. Crutchfield's and Doe's motions address claims that raise too many fact questions to grant summary judgment, so they will be denied.

# BACKGROUND

Jane Doe attended Crown Point High School through most of her junior year (the 2011-2012 school year), during which time she was a minor. The school is public, and a subdivision of the State of Indiana. Brett Crutchfield (42 years old at the time) was a science teacher at the School, and Doe was one of his students. Doe asked to be moved to Crutchfield's classroom during a study hall period. (Docket Entry 71-2 at 104-06, Deposition of Jane Doe; DE 71-1 at 43, 89, Deposition of Brett Crutchfield.) During the first half of the school year Crutchfield began acting in a way that Doe and other students perceived as "seductive." (*See, e.g.*, DE 71-2 at 80, 82.) Doe e-mailed Crutchfield using his School e-mail address. The two continued e-mailing, at first about school matters, but later about personal matters including Doe's cheating ex-boyfriend. (*See, e.g.*, DE 71-2 at 89, 90; DE 71-1 at 31-34.) In these e-mails Crutchfield was "flirty" – for instance, Crutchfield told Doe she was beautiful – but none of the e-mails were explicit or sexual. (DE 71-2 at 89-99.)

The relationship began to change once the two exchanged phone numbers and began texting. One evening Crutchfield texted Doe naked pictures of himself, and Doe sent Crutchfield two pictures of herself partially clothed. (DE 71-2 at 38-48; DE 71-1 at 36-42.) They also exchanged non-picture text messages of a sexual nature, including ones in which Crutchfield told Doe "what he wanted to do to [her] and how he wanted to have sex with [her]." (DE 71-2 at 59; *see also*, DE 71-2 at 118-24.) On a few occasions Crutchfield brushed Doe's leg with his hand. (DE 71-2 at 127-29, 138.) One day during

study hall, when they were alone in Crutchfield's classroom, Crutchfield took Doe's hand and kissed her on the mouth. (DE 71-2 at 127-31; DE 71-1 at 46.) That same evening after the kiss, Crutchfield texted Doe and told her he wanted her to come over to his house. She did not go. (DE 71-2 at 66-74; DE 71-1 at 50-51.)

These events were a fairly closely kept secret. Crutchfield told Doe that "no one can know about this," according to Doe. (DE 71-2 at 76.) Doe told a few school friends about her interactions with Crutchfield, and she told them not to tell anyone. (*See, e.g.*, DE 71-2 at 56.) Doe did not tell any employee of the School, in the administration or otherwise. She conceded in her deposition that "[t]hey had no idea." (DE 71-2 at 62; *see also*, DE 71-2 at 75, 95, 111, 132.) She also didn't tell her parents. (DE 71-2 at 75.) Evidently, one of the friends that Doe told spread the word to others, and eventually someone informed an administrator at the School. (DE 71-2 at 112, 212.)

The School's response to the news was swift. On Friday, April 13, 2012, Doe was pulled out of class, and her father was called. (DE 71-2 at 142, 155-59.) This all happened the same day the School learned of the inappropriate interactions. (DE 70-4 at 3, Deposition of Principal Dr. Ban.) The School immediately — meaning, that same day — sought and received permission from the district office to review Crutchfield's School e-mails, read the e-mails, pulled Crutchfield out of class, and called the police and Child Protective Services. (DE 70-4 at 3-4; DE 71-1 at 58.) Crutchfield was suspended from the School that same day, and forced to resign in May 2012. (DE 71-1 at 70-75.)

After Crutchfield's inappropriate actions came to light, rumors began to fly in the School, among the students. Doe felt that other students were gossiping about her, so she left the cafeteria during lunch and hid in a bathroom stall and ate a lunch of crackers. (DE 71-2 at 141, 143.) At the time, she did not raise with the School the issue of mistreatment by other students. (DE 71-2 at 144.) Doe also felt that the softball team was going to make her life difficult because Crutchfield had been their coach. (DE 71-2 at 163.) Doe said that the School did not disseminate information about the situation, but other students did. (DE 71-2 at 211-12.)

The Monday after Doe was pulled out of class, she had another meeting with School administrators. She told them that she was being bullied because at that point she had received text messages from other students; she saw them come in, but did not read them all, and her father changed her phone number immediately. (DE 71-2 at 167-71.) Doe alleges that School administrators told her "that they couldn't provide a safe environment for [her], so they had come up with some general ideas and options in where [she] could go. They gave her [a neighboring school district's] number, and they gave [her] some other options . . . ." (DE 71-2 at 161.) Another option would have been to take tests and "grade out" so she wouldn't have to go to school any more. (DE 71-2 at 171.) The principal elaborated that the School offered to arrange a special schedule to allow Doe to attend the main school, and to make a counselor available, and to make administrators and security aware of the situation. School administrators drafted a

document containing options to allow Doe to complete her high school education. (DE 70-4 at 6.)

Doe's father felt that the School principal "was concerned about [Doe's] safety and well-being." (DE 70-3 at 4.) However, Doe's father also believed that there was nothing the School could have done to make Doe adequately safe at the main campus. (DE 70-3 at 12.) About a week-and-a-half after Doe had been pulled out of class, she and her father decided that she would attend the Crown Point alternative school. (DE 71-2 at 165-67.) Doe finished her junior year at the alternative school.

Doe and her father met again with School administrators to discuss her senior year. (DE 71-2 at 182-84.) According to Doe's father, he and Doe had made up their minds before that meeting that Doe would attend the alternative school for her senior year. (DE 70-3 at 8-9.) The School principal at that point confirmed that, at that meeting, Doe and her father "weren't willing to discuss anything in regards to any specifics about her placement, other than the desire to attend the alternative school." (DE 70-5 at 3.) School administrators thought that the main campus would be a better fit given Doe's interest in a medical career, but eventually agreed to Doe's preference. (DE 70-5 at 4.) Doe now thinks that the "alternative school wasn't the best for [her]." (DE 71-2 at 182.) The education wasn't as rigorous, and the course offerings weren't as broad. (DE 71-2 at 215-16.)

Crutchfield said during his deposition that, as part of his annual training through the School, he completed sexual harassment training. (DE 71-1 at 77-78). No other

evidence exists in the record regarding the nature and extent of the sexual harassment training provided by the School.

During her deposition, Doe was asked what she thinks the School could have done to prevent Crutchfield's inappropriate actions. She answered that the School could have monitored teacher's incoming and outgoing e-mails. When asked if there was "anything else," she answered "no." (DE 71-2 at 117.)

Also during her deposition, Doe mentioned that, after Crutchfield's conduct towards her came to light, she had heard an unsubstantiated, vague rumor about Crutchfield having sex with a student. Doe "know[s] nothing about" this other student. (DE 71-2 at 179-81.) There is no other information in the record that suggests this might be true, or, if it were, that the School knew or should have known about it. (DE 71-1 at 68-69.)

As a final aside, the Crutchfield family and the Doe family weren't strangers, even before this situation. Crutchfield had previously taught one of Doe's brothers. (DE 71-1 at 23.) More relevantly, when Doe's parents got divorced and there was a custody battle, Crutchfield's then-wife was Doe's father's attorney. (DE 71-2 at 231; DE 71-2 at 148-49.) Doe was sexually assaulted when she was 12, and again (in an unrelated episode) when she was 14. (DE 71-2 at 200-09.) That information may well have come up in the course of the custody proceedings. Crutchfield never said anything about it to Doe, but he allegedly previously mentioned the legal representation to Doe's brother,

and so was aware of the representation, and may have known more, even if only in a general sense. (DE 71-2 at 148-49.)

Doe's amended complaint contains nine counts. Count 1 is alleged against the School and arises under Title IX, alleging actual knowledge and deliberate indifference to harassment and discrimination, and that the School denied Doe access to equal educational opportunities. Count 2, also against the School, arises under 42 U.S.C. § 1983 and is based on alleged *Monell* liability. The problem with the amended complaint is that it does not describe the policy or practice that is alleged to have been unconstitutional. Count 3 is alleged against the School and Crutchfield, and claims violations of Doe's right to equal protection under the Fifth and Fourteenth Amendments. Counts 2 and 3 must be read together: section 1983 is the vehicle to assert the equal protection claim – they are not two separate claims.[1] Count 4 is also a section 1983 claim which alleges the unconstitutional violations of invasion of privacy and illegal seizure against the School and Crutchfield, although Doe dismissed it with respect to the School during a telephonic hearing. Counts 5 through 9 allege state law claims against Crutchfield. Here are those claims: (1) intentional infliction of emotional distress (Count 5); (2) "child seduction" under Ind. Code § 35-42-4-7 (Count 6); (3) battery (Count 7); (4) assault (Count 8); and (5) false imprisonment (Count 9). Doe implicitly conceded that the false imprisonment claim was not viable by not responding

---

[1] Doe's opposition to the School's motion for summary judgment implicitly agreed with this point by combining the argument addressing 1983 and the equal protection claim. (DE 79 at 10-14.)

to Crutchfield's request for summary judgment. So Count 9 will be dismissed without further discussion.

## DISCUSSION

Before I get to the substance of summary judgment, I'll briefly address a procedural issue that the parties raised. The defendants have argued that Doe's motion for summary judgment was late, and that her briefing didn't meet this District's requirements. The defendants are right. But I have discretion when it comes to the local rules of this District and adherence to deadlines I've set, and I wouldn't let the merits of the case fall by the wayside based on minor procedural errors. I'll also note in passing that Crutchfield's response to Doe's untimely motion for summary judgment clearly violates this District's rule that briefs be double spaced, which could be grounds for striking the response if I were so inclined. *See* N.D. Ind. L.R. 1-3 and 5-4(a)(5). (Attorneys who are throwing stones shouldn't take up residence in glass houses.) Crutchfield's motion to strike is **DENIED**. (DE 73.)

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id.* at 255. But the nonmoving

party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quotation marks and citation omitted).

A.      **The School's Motion for Summary Judgment**

Count 1 of the amended complaint alleges a claim against the School under Title IX which prohibits sex-based discrimination in educational programs that get federal money. Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* There is a private right of action for damages under Title IX. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 870-71 (7th Cir. 2012). But to win the plaintiff needs to prove that "an official of the school district who at a minimum has authority to institute corrective measures has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 871 (internal quotation marks, citations, ellipsis omitted). What this means is that it must be proved that the school had "actual knowledge of the misconduct, not just actual knowledge of the risk of misconduct." *Id.* (quoting *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). In other words, *respondeat superior*, or vicarious liability, isn't enough to hold the school responsible.

It is illustrative to very briefly describe *St. Francis*: it's a case of teacher-student impropriety, and the Seventh Circuit found the School was not liable even where another teacher had previously told the administration that the student and the teacher "had something 'like and eighth grade girlfriend/boyfriend relationship,' 'like a

crush.'" 694 F.3d at 872.  In other words, even receipt of the suggestion of an improper

relationship didn't qualify as actual notice.

Doe confusingly argues that the School had "actual notice" by virtue of the fact

that troubling e-mails passed through and were stored on the School's server, "because

[School administrators were] able to access and read those e-mails at that time once they

were saved in the archive." (DE 79 at 3.) But mere access to information, with no

suggestion of willful ignorance (which there isn't any whiff of, here) is simply *not* actual

notice.

As for the deliberate indifference prong of a Title IX claim, the evidence is

uncontested that the day the School found out about the situation, administrators

accessed the e-mails, read them, and *that same day* pulled Crutchfield out of class, pulled

Doe out of class, called the police and Child Protective Services, and called Doe's father.

Doe said several times during her deposition that the School did not know anything,

and she only told a couple of friends, with an admonishment not to tell anyone. Once

the School received actual notice, it responded quickly and decisively, immediately

suspending Crutchfield then forcing him to resign. Even Doe's father stated that he

thought the principal cared about Doe's well-being.

During her deposition, Doe was asked what she thinks the School could have

done to prevent Crutchfield's inappropriate actions. She answered that the School could

have monitored teacher's incoming and outgoing e-mails. When asked if there was

"anything else," she answered "no." (DE 71-2 at 117.) In her briefing, Doe hasn't

pointed to anything that suggests that the School has a duty (or even that it's an industry best-practice) to read every e-mail that goes through its server; indeed, in a good-sized school district such a feat seems impossible or prohibitively expensive.

There is another component to all this that was touched on in the *St. Francis* case. School officials need to be afforded some measure of autonomy and deference when judges are reviewing their actions under Title IX. As the Seventh Circuit put it: "Judges must be sensitive to the effects on education of heavy-handed judicial intrusion into school disciplinary issues, or heavy-handed administrative intrusion required by judges interpreting Title IX and other statutes that, along with free-wheeling interpretations of the speech and religion clauses of the First Amendment, have made education one of the most heavily regulated American industries. Let us not forget that one component of academic freedom is the right of schools to a degree of autonomy in the management of their internal affairs." *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 873 (7th Cir. 2012) (citations omitted).

There might be different ways to run a school district, and different levels of e-mail monitoring, but Doe doesn't provide support for the idea that the School was required to monitor every e-mail, and it certainly doesn't seem objectively unreasonable that the School didn't do that. Doe's Title IX claim against the School therefore fails because the School didn't have actual notice of the situation for the entire time the improper activity was underway, nor was it willfully ignorant, and once the School learned it had happened, the School was not indifferent to it, deliberately or otherwise.

Moving on to counts 2 and 3 of the amended complaint — Doe's section 1983 claim alleging a violation of her right to equal protection under the Fifth and Fourteenth Amendments. The amended complaint could certainly be clearer, but read liberally it alleges that Doe was denied equal treatment by Crutchfield's advances, and the School denied her an equal right to education because she had to go to the alternative school. (DE 79 at 12.)

A 1983 claim requires the plaintiff to show that (1) the conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006) (abrogated on other grounds). As with Title IX, there is no vicarious liability. A municipality decisionmaker must have been involved in the unlawful behavior, or the unlawful behavior must have been done pursuant to an unlawful policy, or practice so pervasive it has the force of policy. *See, e.g.*, *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) ("In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was the moving force behind it. [] Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible. The official policy requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." (internal quotation marks and citations

omitted)); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

So the School's liability under § 1983 as Crutchfield's supervisor requires some evidence that it knew about Crutchfield's "sexual misconduct and facilitated, approved, condoned, or turned a blind eye to it." *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (citing *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))).

As I described in discussing the Title IX claim against the School, the evidence shows that the School did not have any idea about Crutchfield's actions, and as soon as it did, the School acted quickly and decisively. There is no allegation, much less any proof, that the School facilitated, approved, or condoned Crutchfield's behavior. What's more, Doe doesn't provide specific information (or argument) about the School's relevant policies or widespread practices, or what might be unconstitutional about them. For example, there is no evidence that the School failed to adequately train its staff members on sexual harassment. To the contrary, the undisputed, albeit sparse, evidence is that there was annual training on that topic for teachers.

To the extent that Doe is aiming this claim at the fact that she ended up at the alternative school, the deposition testimony makes it clear that the School offered her other options that would have allowed her to attend the main school, or the main school of a nearby district, or to graduate early by testing out, but Doe and her father were firmly decided on the alternative school. The fact that Doe ended up there wasn't the

result of School policy, and there's no evidence that the School singled her out to be sent to the alternative school. The section 1983 equal protection claim against the School must therefore be terminated in a grant of summary judgment.

**B.     Crutchfield's and Doe's Summary Judgment Motions**

Crutchfield says in his brief that he is seeking summary judgment on counts 3, 4, 5, 7, 8, and 9. (DE 67 at 2.) But then his brief only substantively addresses count 5 (intentional infliction of emotional distress), count 7 (battery), count 8 (assault), and count 9 (false imprisonment). Doe's response to Crutchfield's summary judgment motion only addresses counts 5, 7, and 8. As noted earlier, as it relates to count 9, there plainly is no evidence in the record that Crutchfield falsely imprisoned Doe, and since Doe has failed to respond to Crutchfield's summary judgment motion on count 9, it will be granted as to that count. Doe's motion, by contrast, seeks summary judgment on count 5 (intentional infliction of emotional distress), count 6 (Indiana child seduction), and count 7 (battery). As discussed in more detail in the next few paragraphs, count 3 — the section 1983 equal protection claim against Crutchfield — must remain pending because, rather surprisingly, neither side presented any argument relating to that count.

So first up on the hit parade is the just-referenced count 3. Because an equal protection claim on the basis of sexual harassment can be difficult to prove, I'll address this claim briefly, even though Crutchfield didn't actually move for summary judgment on the claim. (Listing it as one he intends to seek summary judgment on certainly doesn't qualify.) The basic requirements for liability are the same as they were for the

School on the equal protection claim: A 1983 claim requires the plaintiff to show that (1) the conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006) (abrogated on other grounds by *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) (holding Title IX does not preclude section 1983 action alleging unconstitutional gender discrimination in schools)).

The Seventh Circuit has "previously held that sexual abuse by a teacher can deprive a student of his or her right to equal protection under the law." *Sandra T.E. v. Grindle*, 599 F.3d 583, 587 (7th Cir. 2010) (citing *Smith*, 470 F.3d 331, 334 (7th Cir. 2006)). In *Smith*, the Seventh Circuit reversed the district court's grant of summary judgment to a school dean who had seriously molested the plaintiff. While the conduct was substantially different in *Smith* than in this case, the Seventh Circuit's discussion of why the 1983 claim against the dean should have proceeded to trial is instructive:

> The (district) court concluded that summary judgment for [the dean] was nonetheless proper because [the dean's] abuse was not state action, which is required to proceed under section 1983. Although not every action by a state employee occurs under color of state law, we conclude the district court erred in this case. "Action is taken under color of state law when it is made possible only because the wrongdoer is clothed with the authority of state law." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989) (quoting *United States v. Classic*, 313 U.S. 299 (1941)) (internal quotation marks omitted).
> [The dean] was arguably clothed with the authority of the state when, at the October 1996 delinquency hearing, the juvenile court released Doe to [the dean's] custody with the express

agreement that the dean would take the boy to register for school. Indeed, the state's attorney told the court that releasing Doe to [the dean's] custody was a good idea because Smith "had been the minor's dean last year." [This made that day's molestation possible.]

More generally, [Doe and his mother] contend that, while supervising students on the playground, [the dean] would often single Doe out and instruct him to report to [the dean's] office, where allegedly he would isolate and sexually groom Doe. Viewing the facts in the light favorable to the Does, a jury could reasonably conclude that [the dean] was acting under color of state law when he withheld Doe from class allegedly to sexually groom him for subsequent abuse. *See West By & Through Norris v. Waymire*, 114 F.3d 646, 647 (7th Cir. 1997) (assuming without discussion that a police officer acted under color of state law when he molested a thirteen year-old girl while escorting her home after curfew). Because Title IX does not preempt the Does' section 1983 claims against [the dean] and because there is a triable issue of fact as to whether [the dean] was acting under color of law when he allegedly abused Doe, judgment as a matter of law was improper. Therefore, we reverse the grant of summary judgment in [the dean's] favor. The Does' section 1983 claims against him must be reinstated.

*Doe v. Smith*, 470 F.3d 331, 340-41 (7th Cir. 2006).

I recognize that our case is very different. However, Crutchfield had access to and influence over Doe solely by virtue of his position as a teacher. She asked him to have her assigned to his classroom for study hall, but he decided to make that happen, which he knew would put her even more under his control, and that they would frequently be alone together. It was during this study hall time that their only physical contact happened – the brushes on the leg and the kiss.

In any event, as I have mentioned, Crutchfield didn't brief the issue (nor did Doe), so count 3 will have to go to trial against Crutchfield. To the extent Crutchfield

believes that merely listing count 3 as a claim on which he intended to request summary judgment was sufficient, that request is **DENIED**.

The next count to be addressed is count 4, which is a section 1983 claim of "invasion of privacy/illegal seizure" under the fourth and fourteenth amendment. Crutchfield's argument section addresses it in three lines, saying that it incorporates by reference Crown Point School's arguments. (DE67 at 4.) This is a bit perplexing because all the School says about Count 4 is in footnote 2: "Count Four of the Amended Complaint alleged invasion of privacy and illegal seizure of her person arising under the Fourth and Fourteenth Amendments, but Plaintiff subsequently voluntarily dismissed those allegations against Crown Point only." (DE 69 at 1-2 n.2.) Essentially, what Crutchfield has done is "incorporate" a nonexistent argument. Because he has made no substantive argument why summary judgment should be granted in his favor on count 4, Crutchfield's motion is **DENIED** with respect to that count.

With that being said, I'm a little dubious of the legal theory set out in count 4 of the amended complaint. The most I can say is that there are undertones of a privacy violation and a seizure in this case, and the facts *might* support these theories. Summary judgment should clarify legal theories, but can only do so when the defendant bothers to substantively challenge the claim, which Crutchfield didn't do. There's no basis on which to grant summary judgment, so I won't. And since other claims will be going forward against Crutchfield (more on that in a moment), the claims in count 4 can best be addressed at trial, and if they are found to be without merit they can be dismissed at

the close of the plaintiff's case under Rule 50. But for now, to reiterate, summary judgment is **DENIED** on count 4.

What remains are the state law claims: Both Crutchfield and Doe seek summary judgment on count 5 (intentional infliction of emotional distress, or "IIED") and count 7 (battery); Crutchfield seeks it on count 8 (assault); and Doe seeks it on count 6 (Indiana child seduction).

To prove IIED, Doe must show that Crutchfield, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another. *See, e.g.*, *Williams v. Tharp*, 914 N.E.2d 756, 769 n.4 (Ind. 2009) (citing *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991)). This is a *very* difficult tort to prove. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Bah v. Mac's Convenience Stores, LLC*, No. 49A02-1407-CT-512, 2015 Ind. App. LEXIS 496, at *25 (Ind. Ct. App. June 30, 2015). Doe has an uphill battle on this claim, but there is a chance that a reasonable jury could find it proved based on these facts: Crutchfield was a teacher, he arranged to have private time during which Doe was required by her school schedule to be in his classroom, he sent her pictures of himself showing full frontal nudity, he knew that she was vulnerable based on their e-mail correspondence about

her personal issues, he knew something about her family situation and her parents' divorce, it is apparent that there would be social and emotional ramifications for a student in Doe's position, Crutchfield tried to entice her to come to his house to engage in statutory rape, and he forcibly initiated a kiss with her in his classroom during a period she was required to be there. A reasonable jury could find that these facts demonstrate an intentional infliction of emotional distress, but it wouldn't be required to. So the cross-motions for summary judgment on count 5 for IIED are **DENIED**.

The tort of battery requires a plaintiff to show that the defendant (1) acts intending to cause a harmful or offensive contact with the person of the plaintiff, or an imminent apprehension of such a contact, and (2) a harmful contact with the person of the other directly or indirectly results. *See, e.g.*, *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007). During her deposition, Doe said the kiss was the offensive and harmful bodily contact, and she found it "disturbing." (DE 71-2 at 238.) The claim isn't a slam dunk for either side – Doe said things that can go on either side of the scale, and of course Crutchfield argues that Doe consented to the kiss, and this is exactly the reason we have trials. The cross-motions for summary judgment on count 7 for battery are **DENIED**.

Crutchfield also seeks summary judgment on count 8, assault. "Assault is effectuated when one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person." *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008) (citing *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991)). Because Doe didn't see the kiss

19

coming, she couldn't have felt apprehension about it. So the kiss itself wasn't an assault. But during her deposition Doe said shortly after the situation came to light she ran into Crutchfield briefly in the hallway and he told her to "deny everything." (DE 71-2 at 152.) Doe said she perceived this as a threat and that she was scared. (*Id.*) Part of the problem with adjudicating the assault claim on summary judgment is that the attorney questioning Doe at her deposition didn't delve into exactly why she felt threatened, or what she was scared of. So we are left with Doe's bare assertions of fear. Doe gets the benefit of the doubt at this stage of the proceeding. Ultimately, whether she is to be believed presents a quintessential fact question for the jury to resolve. Crutchfield's motion for summary judgment on the assault claim is therefore **DENIED**.

Finally, Doe seeks summary judgment on count 6, child seduction under Indiana State law. Indiana Code section 35-42-4-7, in relevant part, defines child seduction as a situation in which a child care worker who is at least 18 years old, including a person employed by a school corporation, engages with a child at least 16 but under 18 "in sexual intercourse, deviate sexual conduct as defined in IC 35-41-1-9), or *any fondling or touching* with the intent to arouse or satisfy the sexual desires of either the child or the adult." (Emphasis added). Crutchfield's intent in kissing Doe is another fact question. Doe's motion for summary judgment on count 6 is therefore **DENIED**.

## CONCLUSION

For the foregoing reasons, Crown Point School Corporation's motion for summary judgment is **GRANTED**, and counts 1, 2, and 3 are dismissed against the

School. (DE 68.) That is all of the counts remaining against the School, so the School is no longer a party to this case, and the Clerk is **DIRECTED** to reflect that on the docket. Crutchfield's motion for partial summary judgment is **DENIED** on all counts except count 9, which was conceded. (DE 66.) Jane Doe's motion for summary judgment is **DENIED**. (DE 72.) Crutchfield's motion to strike Doe's motion for summary judgment is **DENIED**. (DE 73.)

  **SO ORDERED**.

  ENTERED: August 26, 2015

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
